[No. B002159. Second Dist., Div. Seven. Dec. 20, 1984.]

SADE SHOE COMPANY, INC., Plaintiff and Appellant, v. OSCHIN AND SNYDER, Defendant and Respondent.

COUNSEL

Kehr, DeMeter, Factor & Herman and Richard K. Kudo for Plaintiff and Appellant.

Rubin & Rahe and Ken Nathanson for Defendant and Respondent.

OPINION

LILLIE, P. J.—■■ ■■ ■■ ■■ Plaintiff, Sade Shoe Company, Inc., appeals from judgment dismissing its action as to defendant Oschin and Snyder entered after the trial court sustained defendant's demurrer to the first amended complaint without leave to amend.[1] (Code Civ. Proc., § 581, subd. 3.)

The first amended complaint sought compensatory and punitive damages for interference with prospective business advantage and interference with contractual relations. The first cause of action alleged: At all times mentioned defendant was the owner of certain premises which it leased to James and Williams Shoe Company, Inc. (James and Williams) by written lease. William Naythons is, and at all times mentioned was, the president of James and Williams and the sole owner of all of its issued capital stock. In January 1981, Naythons entered into an agreement with plaintiff whereby plaintiff would purchase the stock of James and Williams from Naythons. Said purchase was contingent upon obtaining defendant's consent to the transfer of the stock pursuant to a provision of the lease which prohibits its assignment without the written consent of the owner of the leased premises and states that a sale of the voting securities of a corporate tenant sufficient to work a transfer of control of such corporation constitutes an assignment for pur-

---

[1] Also named as a defendant was Prudential Insurance Company of America. Prudential did not demur to the first amended complaint and the action apparently continues as to said defendant. Nevertheless the judgment of dismissal as to the demurring defendant, Oschin and Snyder, is appealable inasmuch as the judgment finally eliminates the action as to that defendant. (*Iram Enterprises* v. *Veditz* (1981) 126 Cal.App.3d 603, 607, fn. 2 [179 Cal.Rptr. 1].)

For purposes of this appeal we ignore Prudential's presence as a defendant.

poses of the lease.[2] Defendant knew of the existence of the agreement between plaintiff and Naythons and that such agreement provided the probability of substantial future economic benefit to plaintiff. In February 1981, Naythons asked defendant to consent to the contemplated transfer of stock to plaintiff. In conjunction with said request Naythons informed defendant that while he desired to assign the lease to plaintiff, the business conducted on the leased premises would continue to be operated by and under the name of James and Williams; Naythons would continue to manage and operate James and Williams as he had done for the past 43 years; the principals of plaintiff corporation included the accountant of James and Williams and one of its employees whom Naythons was "grooming" to operate the business fully; despite the contemplated transfer of the stock to plaintiff, the business of James and Williams would go on just as in the past and there would be absolutely no change in its method of operation. Defendant refused to consent to the transfer of James and Williams stock to plaintiff. In June 1981 Naythons again asked defendant to consent to said transfer, this time agreeing to personally guarantee the performance of James and Williams under the lease. Defendant again refused, and continues to refuse, to consent to the transfer of the stock and the assignment of the lease. Said refusal is arbitrary, capricious and without any reasonable justification. At no time did defendant attempt to inquire into plaintiff's financial condition or method of operation. Defendant withheld its consent in order to prevent consummation of the sale of stock for its own personal gain and benefit in the form of regaining possession of the leased premises and/or extracting additional rent. As a proximate result of defendant's refusal to consent to sale of the stock and assignment of the lease plaintiff, Naythons, and James and Williams were unable to consummate said sale and assignment. By reason thereof plaintiff sustained damages including, but not limited to, expenses of at least $30,000 which defendant knew or reasonably should have known plaintiff would incur in reliance on its contract with Naythons; and loss of anticipated profits of at least $150,000. Defendant acted willfully and ma-

---

[2]Paragraph 13 of the lease, as set forth *in haec verba* in the first amended complaint, provided: "Assignment and Subletting. Tenant shall not assign, transfer, mortgage, pledge, hypothecate or encumber this Lease, or any interest therein, and shall not sublet the Premises or any part thereof, or any right or privilege appurtenant thereto, or suffer any other person (the agents and servants of Tenant excepted) to occupy or use the Premises, or any portion thereof, without first obtaining the written consent of Owner and a consent to want [*sic*] assignment, subletting, occupation, encumbrance or use by any other person shall not be deemed to be a consent to any subsequent assignment, subletting, occupation, encumbrance or use by another person. Any such assignment or encumbrance without such consent shall be void, and shall, at the option of Owner, terminate this Lease. This lease shall not, nor shall any interest therein, be assignable as to the interest of Tenant by operation of law, without the written consent of Owner. *The sale of voting securities of a corporate tenant sufficient to constitute a transfer of control of such corporation shall constitute an assignment for purposes of this Section 13.*" (Italics added.)

liciously and with the intent to injure and oppress plaintiff, entitling plaintiff to punitive damages of $500,000.

The second cause of action, after incorporating the foregoing allegations, alleged that defendant's conduct constituted interference with contractual relations between plaintiff and Naythons; plaintiff accordingly has been damaged as alleged in the first cause of action.

Defendant demurred generally to the first amended complaint, and each cause of action, on the ground that defendant's refusal to consent to sale of lessee's stock to plaintiff, and consequent assignment of the lease, was justified by the terms of the lease which do not provide that consent to its assignment shall not be unreasonably or arbitrarily withheld. In support of this contention defendant relied on *Richard* v. *Degen & Brody, Inc.* (1960) 181 Cal.App.2d 289 [5 Cal.Rptr. 263], wherein it is stated: "'. . . [W]here a subletting or assignment of the leased premises without the consent of the lessor is prohibited, he may withhold his assent arbitrarily and without regard to the qualifications of the proposed assignee, unless . . . the lease provides that consent shall not be arbitrarily or unreasonably withheld, and in granting his assent may impose such conditions as he sees fit. Accordingly, if the right to assign or sublet is restricted by statute or by the terms of the lease, and the lessor does not covenant to give his consent to an assignment or subletting, the lessee has no remedy against the lessor for his refusal to consent thereto.'" (P. 299.) ██ The fact that the lease may have authorized defendant arbitrarily to withhold its consent to assignment does not resolve the issue whether such conduct on defendant's part was justified, thereby furnishing a defense to each of plaintiff's causes of action. (See *Richardson* v. *La Rancherita* (1979) 98 Cal.App.3d 73, 80-82 [159 Cal.Rptr. 285].)

██ An action lies for the intentional interference by a third person with a prospective economic advantage or a contractual relationship[3] either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification or privilege for such interference. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 319 [70 Cal.Rptr. 849, 444 P.2d 481]; *Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 205 [14 Cal.Rptr. 294, 363 P.2d 310].) ██ The unjustifiability or wrongfulness of the act may consist of the purpose or motive of the actor as well as the method used. (*Rickel* v. *Schwinn Bicycle Co.*

---

[3]The tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage and though the two actions are similar, the existence of a legally binding agreement is not a *sine qua non* to the maintenance of a suit based on the more inclusive wrong. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 823 [122 Cal.Rptr. 745, 537 P.2d 865].)

(1983) 144 Cal.App.3d 648, 661 [192 Cal.Rptr. 732].) ■ "[E]ven if the means used by the defendant are entirely lawful, intentional interference with prospective economic advantage constitutes actionable wrong *if* it results in damages to the plaintiff, *and* the defendant's conduct is not excused by a legally recognized privilege or justification [citations]." (*Lowell* v. *Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13, 20 [144 Cal.Rptr. 664, 6 A.L.R.4th 184]; original italics.) ■ Whether an intentional interference by a third party is justifiable turns upon a balancing of the social and private importance of the objective advanced by the interference against the importance of the interest interfered with, considering all the circumstances including the nature of the actor's conduct and the relationship between the parties. (*Herron* v. *State Farm Mutual Ins. Co., supra,* 56 Cal.2d 202, 206; *Richardson* v. *La Rancherita, supra,* 98 Cal.App.3d 73, 80; see also Rest.2d Torts, § 767.) ■ The question on the issue of privilege is whether the actor's conduct was fair and reasonable under the circumstances, which is a question for determination by the trier of fact. (*Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200, 230 [194 Cal.Rptr. 180]; *H & M Associates* v. *City of El Centro* (1980) 109 Cal.App.3d 399, 409 [167 Cal.Rptr. 392].)

■ While defendant's culpable intent is an element of the cause of action to be pleaded and proved by plaintiff, defendant's justification is an affirmative defense in both an action for interference with prospective economic advantage and an action for interference with an existing contractual relationship. (*A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 714 [104 Cal.Rptr. 96].) ■ Accordingly, justification may not be considered as supporting the trial court's action in sustaining a demurrer unless it appears on the face of the complaint. (*H & M Associates* v. *City of El Centro, supra,* 109 Cal.App.3d 399, 405; *Gold* v. *Los Angeles Democratic League* (1976) 49 Cal.App.3d 365, 376 [122 Cal.Rptr. 732].)

■ ■ The facts alleged in the first amended complaint, which for the purpose of a demurrer must be regarded as true (*Scannell* v. *County of Riverside* (1984) 152 Cal.App.3d 596, 611 [199 Cal.Rptr. 644]), establish that defendant intentionally interfered with a prospective advantageous business relationship and a contractual relationship, and that such interference resulted in substantial damages to plaintiff. These allegations are sufficient to state a cause of action for interference with such relationships unless it can be said that the facts averred in the complaint show justification or privilege as a matter of law. (See *Lowell* v. *Mother's Cake & Cookie Co., supra,* 79 Cal.App.3d 13, 19-20.) No such justification appears on the face of the first amended complaint. That pleading alleged that defendant, in refusing to consent to sale of the stock and assignment of the lease, made no effort to inquire as to the financial condition or method of operation of

plaintiff, the proposed assignee. It was further alleged that defendant withheld consent for its own personal gain and benefit, viz., in order to regain possession of the leased premises and/or extract additional rent. Such allegations suggest an absence of privilege or justification. It is true that defendant, as lessor, had at least an indirect financial interest in the business of its lessee, James and Williams. ■ "One who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor [¶] (a) does not employ improper means, and [¶] (b) acts to protect his interest from being prejudiced by the relation." (Rest., Torts, § 769.) The financial interest privileged under this provision is an interest in the nature of an investment, i.e., interest of a part owner, partner, stockholder and the like. (*Lowell* v. *Mother's Cake & Cookie Co., supra,* 79 Cal.App.3d 13, 21.) ■ Accordingly, defendant's position of lessor does not furnish it with a privilege or justification to interfere with the proposed sale of stock by its lessee's sole stockholder to plaintiff and consequent assignment of the lease. ■ In any event, the privilege "is at most a qualified one dependent for its existence upon the circumstances of the case. It is essentially a state-of-mind privilege and therefore its existence cannot normally be satisfactorily determined on the basis of pleadings alone. [Citation.] The resolution of the issue turns on the defendant's predominant purpose in inducing the breach of the contract. [Citation.] This is preferably a matter to be determined on the basis of proof rather than of pleading." (*Culcal Stylco, Inc.* v. *Vornado, Inc.* (1972) 26 Cal.App.3d 879, 883 [106 Cal.Rptr. 419].)

■ We conclude that the trial court erred in sustaining defendant's demurrer to the first amended complaint and dismissing plaintiff's action as to defendant.

DISPOSITION

The judgment is reversed.

Thompson, J., and Johnson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 14, 1985. Mosk, J., was of the opinion that the petition should be granted.