[No. B015431. Second Dist., Div. Seven. Feb. 2, 1987.]

AIRPORT PLAZA, INC., Plaintiff and Appellant, v.
GLADYS MOTLEY BLANCHARD, Defendant and Respondent.

**COUNSEL**

Willard M. Reisz for Plaintiff and Appellant.

Gilbert, Kelly, Crowley & Jennett and David G. Marcus for Defendant and Respondent.

**OPINION**

**THOMPSON, J.**—Plaintiff and appellant Airport Plaza, Inc. (Airport Plaza or lessee) has appealed from a judgment against it and in favor of defendant

and respondent Judson Blanchard (hereinafter Blanchard), entered after a trial before the court sitting without a jury[1]

FACTS

The judgment for Blanchard was rendered after trial upon the issues raised in Airport Plaza's complaint for declaratory relief. In that complaint, Airport Plaza sought a determination that as lessee of the premises of a shopping center from Blanchard, under the terms of a 75-year ground lease, Airport Plaza was entitled to mortgage its leasehold without Blanchard's written consent. To achieve this objective, Airport Plaza requested a further determination that Blanchard was obligated to grant to any institutional or commercial lender the usual and customary rights requested by such a lender, and to execute estoppel statements advising the lender as to the existing terms of the lease and whether any default then existed under the terms of the lease. Airport Plaza also sought a declaration that it was entitled to assign its interest in the lease to its two shareholders as individuals, and dissolve and liquidate itself as a corporation.

The facts of this case may be summarized as follows: The lease was entered into on January 1, 1960, between Blanchard as lessor and two individuals who were the predecessors in interest of Airport Plaza. On April 27, 1961, the lease was assigned to Airport Plaza by a written instrument, and Airport Plaza agreed to assume the terms of the lease. The business of Airport Plaza was shopping center development and management, particularly the development and management of Burbank Plaza Shopping Center, which was the subject of the ground lease with Blanchard. At the time of the present proceeding, the shopping center was fully physically improved and subleased to tenants. Steve Leonard, vice president and member of the board of directors of Airport Plaza, testified that Airport Plaza wanted to mortgage its leasehold estate at the time of this proceeding in order to get out some of the money it had invested and which was justified by the current higher rental income. The money would not be reinvested in the shopping center. Airport Plaza also wished to dissolve the corporation and assign its assets, including the lease, to its two shareholders. Mr. Leonard testified that the mortgage would bring money into the corporation and increase the tax basis of the real estate, and the corporate dissolution would allow the shareholders to treat the cash generated by the mortgage as capital gains. The dissolution would also allow the shareholders to benefit from the cash flow on the property.

---

[1]Judson Blanchard died on October 13, 1985, and by order of this court his widow has been substituted in his place as a party to this action. (See Cal. Rules of Court, rule 48(a).)

Sandra Coopersmith, a vice president of a mortgage company which had done business with Mr. Leonard, testified about the terms of the proposed mortgage in this case and as an expert about the terms required of commercial lenders generally for loans on ground lease estates. Her testimony about these requirements is set forth below in connection with the discussion of the issues.

Neither shareholder of Airport Plaza testified at trial. It was stipulated, as well, that Judson Blanchard was unable to testify due to ill health.

The defense called Stanley Pearson, who was Mr. Blanchard's attorney when the lease was negotiated. He testified that when Mr. Blanchard had leased the property to a previous commercial tenant, the lessee had been given the unlimited right to hypothecate its leasehold estate. However, after extensive negotiations with the first lessees under the present draft of the lease, the right to hypothecate was limited to the purpose of developing the property as a shopping center and borrowing the money to do so, and that there would be no further hypothecation after the improvements were constructed. The lessees' request for the unlimited right to hypothecate was denied. He also testified that the estoppel agreement requested of Mr. Blanchard by Ms. Coopersmith's mortgage company before making the loan to Airport Plaza would have required Mr. Blanchard to alter the terms of the lease. He further testified that the lease provision in article 18, that in the event of assignment of the entire leasehold the assignor must agree to remain personally liable, was included because Mr. Blanchard wanted it.

The court's statement of decision included the following facts: Article 17 of the lease provides that lessee is entitled to hypothecate its interest for the purpose of improving the real property. It was the parties' intent in drafting article 17 to restrict any hypothecation except for the purposes outlined in article 17. In the present proceedings, Airport Plaza desired to hypothecate the premises for purposes other than to improve the real property and therefore the permission granted in article 17 was inapplicable. The court found that as the term is used in article 18 of the lease, hypothecation constitutes an assignment of less than the entire leasehold which is prohibited by the lease without the consent of Blanchard. The court further found that no commercial lender would make a loan on the property without requiring the lessor to consent to conditions which would amount to an amendment of the lease and that the lessor was not obligated to do so. The court also found that article 18 entitles the lessee to assign the entire leasehold estate without the lessor's consent, but only if the assignor remains personally liable on the lease. Therefore, dissolution of Airport Plaza as a corporation following assignment of its interest to its shareholders would breach article 18.

Airport Plaza has appealed, asking this court to make a new and different declaration.

DISCUSSION

I

HYPOTHECATION

■ There are two clauses in the lease which are relevant in determining whether lessee can hypothecate its interest in the leasehold. First, article 17 provides that: "Lessee shall be entitled to hypothecate its interest under this Lease for the purpose of improving the real property in accordance with Article 9 of this lease, but any such hypothecation shall be subject and subordinate to the provisions of this lease, and no such hypothecation shall impair any of the rights or remedies or the interest of the Lessor under this lease." Article 9 provides that lessee agrees to construct a modern shopping center on the premises and sets forth detailed specifications for type of stores and tenants. It is uncontroverted that Airport Plaza had already constructed the shopping center as provided in article 9. Stanley Pearson testified that he understood there were to be no hypothecations of the leasehold after the construction was completed. Therefore, the court's finding that the present request to hypothecate the leasehold cannot be supported by the rights granted in article 17 is supported by substantial evidence and must be upheld.

■ Airport Plaza contends that since the lease does not expressly forbid hypothecation after completion of the improvements, hypothecation must be freely permitted. In support of this contention, Airport Plaza cites the rule that, in the absence of a provision in the lease to the contrary, a leasehold may be assigned. (See *Kassan* v. *Stout* (1973) 9 Cal.3d 39, 43 [106 Cal.Rptr. 783, 507 P.2d 87].) However, article 18 of the lease controls the transfer or assignment of the lease, or lessee's interest, on the following terms: "Except as otherwise provided in this lease, Lessee shall not *transfer or assign* this lease, in whole or in part, *or its interest hereunder* . . . without receiving the prior written consent of Lessor." (Italics added.)[2]

---

[2]In response to this court's letter requesting additional briefing, appellant Airport Plaza has contended that a lease covenant against assignment is not violated by either the mortgaging or the granting of a deed of trust on the lessee's estate. Hence, appellant contends that a clause in a lease which governs assignment does not control the rights of the lessee to establish a security interest. Appellant contends that its position is supported by *Chapman* v. *Great Western Gypsum Co.* (1932) 216 Cal. 420 [14 P.2d 758], in which the Supreme Court held that a lease provision prohibiting assignment must be strictly construed, so that it is not

Therefore, even assuming, as appellant contends, that the provisions of article 17 do not forbid hypothecation, there is still the issue of whether Blanchard could reasonably refuse to allow Airport Plaza to hypothecate its leasehold upon the terms set forth in this action for declaratory relief. ■ In *Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488 [220 Cal.Rptr. 818, 709 P.2d 837], the Supreme Court held that where a commercial lease provides for assignment only with the prior written consent of the lessor, the lessor may refuse to consent where the lessor has a commercially reasonable objection to the assignment. (*Id.,* at p. 496.) A duty is imposed on the lessor to exercise the right to refuse consent consistently with the lessor's duty as a party to the contract to exercise its discretion in good faith and in accordance with fair dealing. (*Id.,* at p. 500.) The determination of whether a lessor's refusal was commercially reasonable is a question of fact. (*Id.,* at p. 501.) The clause requiring lessor's consent is " ' "for the protection of the landlord *in its ownership and operation of the particular property* . . . ." ' " (*Id.,* at p. 501.) Valid objections include not only the proposed assignee's financial stability but other commercial objectives, such as, for example, desire to have only one "lead tenant." (*Id.,* at p. 502.)

The question of reasonableness must be considered in light of the nature of a ground lease. ■ According to commentators, a ground lease is best considered as a financing device for developing unimproved land. The lessor's role is similar to that of a secured lender, and the lessee pays for most of what is necessary to develop the land and protect the lessor's role as passive investor. (See Grenert, Ground Lease Practice (Cont.Ed.Bar 1971) § 1.1, p. 7; Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1979) § 3.13 pp. 86-87.) If the lessee defaults on a mortgage of his leasehold estate, the purchaser at the foreclosure sale becomes the new lessee. (*Ibid.*)

■ Lessee's witness, Sandra Coopersmith, testified that a commercial lender requires a lessor to provide, at a minimum, an unqualified estoppel statement establishing that the lease is in full force and effect, that there have been no defaults and that there have been no amendments other than those stipulated in the lessee's statement. The lender would also want notice of default and opportunity to cure default upon notice, with 30 days beyond what is provided in the ground lease in which to do so. Additionally, the

violated by giving a mortgage on the lease. Appellant contends that hypothecation in connection with a trust deed also would not be governed by an assignment provision. However, we need not decide this technical question, as the language of article 18 of this lease governs assignment or "transfer" of the lease, "in whole or in part, or [lessee's] interest hereunder. . . ." This language is broad enough to cover transfers to secure a loan.

lender requires an opportunity to foreclose upon the lessee and be accepted by the lessor as the new ground lessee, and the right in turn to assign that leasehold estate and be relieved of any continuing obligation or liability under the lease. As the trial court found, these terms constituted a substantial variation of the lease in this case, and it must be concluded that the lessor here has commercially reasonable grounds for refusing to consent to hypothecation on these terms.

The terms required by a commercial lender would particularly interfere with the intention reflected in the lease provisions found in article 18, as follows: "Lessee is specifically given the right to assign the entire leasehold estate (but not an assignment of any specific parcel thereof). Any such assignment shall be valid only if at the time thereof the Lessee shall notify the Lessor thereof in writing of such assignment *and shall secure a signed agreement by such assignee, assuming and agreeing to carry out the terms and provisions of this lease.*" (Italics added.)

The testimony of lessee's witness, Sandra Coopersmith, was uncontroverted that no commercial lender would agree to assume the obligations and provisions of the lease, supporting the trial court's finding that no institutional or commercial lender would agree to be bound by the terms of the lease or assume its obligations.

Appellant concedes that it would be unreasonable to require the lessor to consent to some of the requirements of a commercial lender, but requests that this court make a declaration that Blanchard is required to provide an unqualified estoppel certificate establishing that the lease is in full force, that there are no uncured defaults thereunder, and that there are no amendments other than those stipulated in the lessee's statement. Appellant bases this request on the hypothetical situation that lender would make a loan on the basis of this statement alone, whereas Ms. Coopersmith's testimony, read fairly as a whole, supports the trial court's finding that an institutional lender requires all of what Ms. Coopersmith described, including items which lessor could not reasonably be required to provide.

II

DISSOLUTION OF THE CORPORATION

This case also presents the question of whether Airport Plaza may assign its leasehold interest and assets to its shareholders and then dissolve as a corporation, consistent with the terms of the lease. The trial court found

as follows: "Article 18 of the lease entitles plaintiff [Airport Plaza] to assign the entire leasehold estate, *without defendant's* [*Blanchard's*] *consent,* only if following such assignment plaintiff remains personally liable under the lease until all encumbrances shall have been paid in full. The term 'person' includes a corporation as well as a natural person . . . . The parties clearly intended the retention of the liability of the lessee following an assignment . . . ." (Italics added.) The court further found that dissolution of the corporation would deprive lessor of the continuing liability of Airport Plaza as a lessee/assignor and, therefore, would violate the terms of the lease.

The first sentence of article 18 provides that the lessee may not assign the lease without the prior written consent of lessor. As discussed above, that consent may not be withheld unreasonably. Several cases have discussed the issue of whether the lessor may reasonably refuse to consent to various corporate transfers. In *Sade Shoe Co.* v. *Oschin & Snyder* (1984) 162 Cal.App.3d 1174 [209 Cal.Rptr. 124], this court held that where the lease provided that the sale of the voting securities of a corporate tenant sufficient to constitute transfer of control would constitute an assignment of the lease, and the lease prohibited assignment without the written consent of the lessor, that it could not be said as a matter of law that lessor could withhold its consent to the sale of all of the corporate stock of the corporate lessee to a new owner. The court held that the lessor's demurrer to lessee's complaint for wrongful interference with prospective advantage should not have been sustained because a question of fact remained whether lessor had unreasonably withheld consent. In that case, the complaint alleged that the original sole shareholder of the original lessee would continue to be personally involved in the continued operation of the lessee's business and would personally guarantee the performance of the new lessee under the lease. (*Id.,* at p. 1178.) That case must be distinguished from the present case, in which there has been a trial of the factual issues. Moreover, there were no assurances here of how the former shareholders of Airport Plaza would continue to operate the shopping center.

■ It has generally been held that when there is a technical change of ownership of the lessee or the legal form of its business which does not affect the rights of the landlord, there is no violation of an antiassignment clause. For example, in *Richardson* v. *La Rancherita* (1979) 98 Cal.App.3d 73 [159 Cal.Rptr. 285], the court held that sale of all the shares of stock in lessee corporation to another party which desired to become the new lessee did not violate an antiassignment clause. Likewise, in *Sexton* v. *Nelson* (1964) 228 Cal.App.2d 248, 258-259 [39 Cal.Rptr. 407], the court held that lessee's transfer of the lease to a corporation wholly owned by him does not violate an antiassignment or antitransfer provision in the lease.

However, the present case is distinguishable because here, the lessee corporation wishes to dissolve as a corporation and distribute its assets to its two shareholders. The assets of the corporation would thereby become a part of the personal assets of the former shareholders and subject to commingling and use for purposes other than those connected with this shopping center lease. The security of Blanchard, as ground-lessor, could be impaired by such an arrangement.

Airport Plaza contends on appeal that Blanchard is protected because the Corporations Code requires that the corporation's known debts and liabilities must be provided for in a dissolution. Payment must be assumed or guaranteed by a financially responsible person or corporation and the provision must be determined in good faith and with reasonable care by the board of the corporation to be adequate as of the time of the distribution of assets. (Corp. Code, § 2005, subd. (a).) Corporations Code section 2010, subdivision (a) provides as follows: "A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof." Airport Plaza contends that Blanchard is protected because if he became a judgment creditor of the dissolved corporation, he would have a cause of action against each director who participated in authorizing distributions in liquidating the corporation, citing *Zinn* v. *Bright* (1970) 9 Cal.App.3d 188 [87 Cal.Rptr. 736].

It is beyond the purview of this action to determine whether, if Airport Plaza were to apply to wind up and dissolve, it would be able to certify that it had provided for its obligations under the lease, because there was no evidence in the trial of this case as to how Airport Plaza proposed to provide for its obligation under the lease. Steve Leonard testified that the purpose of mortgaging the leasehold would partially be "to get out some of the money it has put into the property, and, in addition, to take out money that is justified by the higher rental income." Another purpose was to derive benefits under the tax laws then in existence. Airport Plaza had invested about $750,000 in the property. Mr. Leonard further testified that his father, one of the two shareholders of Airport Plaza, had a net worth of at least $10 million. There was no testimony as to how Airport Plaza's shareholders would continue to operate as lessees in the event of corporate dissolution, such as, for example, how rents would be collected from the subtenant businesses. Moreover, there was no testimony on what provisions would be made to secure lessee's performance after dissolution of the corporation.

As pointed out in 1A Ballantine and Sterling, California Corporation Law (4th ed. 1986) section 314.03, pages 15-20, cited by Airport Plaza on this appeal, a corporation which is a lessee normally must make a choice on dissolution of whether to repudiate the lease and reach a settlement with the lessor or continue in operation as long as necessary to carry out the lease. By this action, Airport Plaza apparently seeks a declaration which would enable it to avoid the usual alternatives. However, we have concluded that lessor may reasonably refuse to consent to this arrangement.

DISPOSITION

The judgment is affirmed. Respondent Blanchard shall recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.