951 F.2d 360
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Bruce McKINNEY and Jan McKinney, Plaintiff-Appellants,
v.
ANHEUSER-BUSCH, INC., Defendant-Appellees.
 No. 90-16263.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1991.
Decided Dec. 16, 1991.
 
 Before TANG, REINHARDT and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The plaintiffs, Bruce and Jan McKinney, filed an action for breach of contract and tortious interference with contractual relations in California state court. The defendant, Anheuser-Busch, removed the case to federal court on the basis of complete diversity pursuant to 28 U.S.C. § 1446. The district court then dismissed the action under Fed.R.Civ.P. 12(b)(6). We review the district court's order de novo and, in doing so, construe all material allegations in the complaint in the light most favorable to the plaintiff. See North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 580 (9th Cir.1983).
 
 
 3
 So construed, the facts in the case are relatively simple. The plaintiffs allege that they entered into a purchase agreement with the Mendocino Coast Distributing Company, an Anheuser-Busch wholesaler. Mendocino agreed to sell the McKinneys its tangible assets and to assign its rights to distribute Anheuser-Busch products. However, because assignment of the distribution rights required Anheuser-Busch's approval under the terms of its wholesaler agreement with Mendocino, Mendocino and the McKinneys' agreement was made contingent upon receipt of that approval. Anheuser-Busch refused to give its consent, and McKinney filed suit.
 
 
 4
 Both parties concede that California law governs this case. We must therefore determine how California's highest court would resolve this appeal. See Estrella v. Brandt, 682 F.2d 814, 817 (9th Cir.1982). In doing so, we do not give deference to the district court's determinations of state law. See Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991).
 
 
 5
 The district court correctly concluded that the McKinneys may not assert a breach of contract claim arising from the Anheuser-Busch wholesaler agreement. Because the McKinneys were not parties to that agreement, they do not have standing to assert a breach of contract claim unless they are third party beneficiaries. See Murphy v. Allstate Ins. Co., 17 Cal.3d 937, 943-44 (1976). The wholesaler agreement expressly provides that proposed assignees of distribution rights are not third party beneficiaries of the agreement. Although the McKinneys are not bound by the language of the contract, they have suggested no reason why the intent of the agreement should not govern in this case. Accordingly, they lack standing to assert a claim for breach of contract of the wholesaler agreement.
 
 
 6
 The district court erred, however, in concluding that the McKinneys failed to state a claim for tortious interference with contractual relations. The district court is correct that a necessary element of the plaintiff's claim is the existence of a contractual relationship "between plaintiff and a third party." Pacific Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal.3d 1118, 1126 (1990). As the plaintiffs allege that Anheuser-Busch interfered with a contractual relationship between the plaintiffs and Mendocino, the question is whether Mendocino is sufficiently independent of Anheuser-Busch to constitute an independent third party to the litigation. The district court held that because Anheuser-Busch is "the source of the interest which plaintiffs sought to purchase from Mendocino," Mendocino and Anheuser-Busch are not independent for purposes of the plaintiffs' tortious interference claim. District Court Order at 3. This conclusion relies on a misreading of California law.
 
 
 7
 Under California law, the requirement that the interfered-with contractual relationship extend between the plaintiff and an independent third party serves to prevent the plaintiff from turning an action for breach of contract into one for tortious interference, thereby enlarging the proper measure of damages. See Dryden v. Tri-Valley Growers, 65 Cal.App.3d 990, 999 (Cal.App.1977). In the instant case, Anheuser-Busch is not a party to the agreement between the plaintiffs and Mendocino. The fact that Anheuser-Busch is the source of the interest that the plaintiffs seek to purchase does not bind Anheuser-Busch to the terms of the purchase agreement. There is simply no reason--and the defendants do not suggest one--to find that the plaintiffs should have brought their action as one for breach of contract rather than for tortious interference. Accordingly, Mendocino qualifies as an independent third party.
 
 
 8
 The proper analysis of the effect of the wholesaler agreement on the plaintiffs' tort action is demonstrated in Sade Shoe Company v. Oschin and Snyder, 162 Cal.App.3d 1174 (1984).[1] In that case, the purchase of a shoe corporation was contingent upon approval by the lessor of the corporation's premises of the lease's assignment. The lessor refused to consent, and the prospective purchaser sued for tortious interference. The state trial court dismissed, but the appellate court reversed.
 
 
 9
 According to the appellate court, the fact that the lessor may have had a contractual right to refuse assignment did not defeat the plaintiff's claim. The court noted that the terms of the lease may perhaps provide the defendant with a basis for the defense of justification, but that depended on the equities of the situation, which had to be evaluated by the trier of fact. See id. at 1179-80 ("The fact that the lease may have authorized defendant arbitrarily to withhold its consent to assignment does not resolve the issue whether such conduct on defendant's part was justified, thereby furnishing a defense to each of plaintiff's causes of action.... The question on the issue of privilege is whether the actor's conduct was fair and reasonable under the circumstances, which is a question for determination by the trier of fact.").
 
 
 10
 Under this analysis, the defendant's motion to dismiss will not be proper unless the defense of justification "appears on the face of the complaint." Id. at 1180. The district court concluded that because the defendant was the source of the interest at issue in the purchase agreement, the complaint failed to state a claim. It is true that " '[o]ne who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business.' " Id. at 1181 (quoting Restatement of Torts § 769). It is not clear whether Anheuser-Busch's relationship with Mendocino gives rise to this type of justification, see id. (stating that "[t]he financial interest privileged under this provision is an interest in the nature of an investment" and holding that the position of lessor does not give rise to the justification), but we need not decide the question. The justification is at best a qualified one, and it depends upon the defendant's predominant purpose in interfering with the contractual relationship. See id. This is generally a matter of "proof rather than pleading, id., and we cannot say from the face of the complaint that the defendant did not have a forbidden purpose.
 
 
 11
 Finally, the defendant argues that the analysis in Sade Shoe is inapplicable because it depended upon the public policy against restraints on the alienation of land. See Appellee's Brief at 15. We do not find Sade Shoe to be so limited. First, the court's opinion nowhere relies on this policy. Second, and more important, the court's reasoning is more widely applicable. The gravamen of Sade Shoe is that a complaint for tortious interference with contractual relations is not defeated by the fact that the defendant has a contractual relationship with one of the parties to the contractual relationship because there is a public policy against allowing interference with contractual relations by improper means or for improper reasons. This public interest is present regardless of the subject of the contract, and thus a factual inquiry into the defendant's means and motive is generally necessary. See, e.g., Winn v. McCulloch Corp., 60 Cal.App.3d 663, 673 (1976) (aircraft distributorship); Restatement of Torts, § 769, illustrations 1 & 2 (applying § 769 to contracts for employment in a theatrical performance and for the purchase of raw materials). Accordingly, the analysis of Sade Shoe is applicable to the contractual relationship here.[2]
 
 
 12
 Accordingly, the district court erred in concluding that the plaintiff had failed to state a claim for tortious interference with contractual relations. We therefore reverse the judgment of dismissal on this claim and remand for further proceedings consistent with this opinion.
 
 
 13
 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 
 
 14
 TROTT, Circuit Judge, dissenting.
 
 
 15
 I respectfully disagree with the majority's view that Sade Shoe Co. v. Oschin & Snyder, 162 Cal.App.3d 1174, 209 Cal.Rptr. 124 (1984), controls the disposition of this case. The court in Sade Shoe concluded that a cause of action for intentional interference with prospective business advantage had been pleaded. In Sade Shoe, the lessor and lessee were independent entities. The only relationship between the lessee, a corporate tenant, and the defendant-lessor was the lease. The terms of the lease required lessor consent to a sale of voting securities of the corporate tenant sufficient to transfer control. The lessee was only dependent upon the lessor to assure continued availability of the leased premises. The lessee's business operations were not integrally entwined with the business of its lessor. Thus, it was proper to view the lessor as a "third person."
 
 
 16
 In the case at bar, the worth of the Mendocino Park distributorship is directly linked to the distribution of Anheuser-Busch products. This value dependency is demonstrated by the consent contingency in the contract and the McKinney's own acknowledgment that the distributorship would not be "cost-effective" without the Anheuser-Busch wholesale rights. Anheuser-Busch can hardly be classified as a "third person" when it was the source of the business opportunity sought to be transferred.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Sade Shoe is an intermediate appellate decision, we will follow it "unless there exists convincing evidence that the state supreme court would decide the issue differently." Miller v. Fairchild Industrs., Inc., 797 F.2d 727, 735 (9th Cir.1986). We find the Sade Shoe court's analysis persuasive and, indeed, the California Supreme Court has cited the case with approval, see Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal.3d 1118, 1129 n. 8 (1990)
 
 
 [2]
 Because we find that Sade Shoe is limited to contracts involving the alienation of real property, we need not determine whether the public policy against restraints on the alienation of beer would produce a similar rule