JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE
Now before the Court are the parties' cross-motions for summary adjudication. Defendants XPO CNW, Inc. and XPO Logistics, Inc. ("Defendants") move for summary adjudication of the second cause of action for intentional interference with contract, the third cause of action for elder abuse, and Plaintiff's claims for punitive damages. Plaintiff Christopher O'Brien, acting as trustee of the Raymond F. O'Brien Revocable Trust, seeks partial summary judgment of his first cause of action for breach of contract. Having carefully reviewed the parties' papers, considered *781 their arguments and the relevant legal authority, the Court hereby DENIES Defendants' motion for summary adjudication and GRANTS Plaintiff's motion for partial summary judgment.
BACKGROUND
From 1958 through 1995, Raymond O'Brien ("O'Brien") served first as controller, and ultimately as a President, CEO, and Chairman of the Board of Directors for Consolidated Freightways, Inc. ("the Company"). In 1997, the Company changed its name to CNF, Inc. and then again in 2006 to Con-Way, Inc. The Company was acquired by XPO Logistics, Inc. ("XPO") in November 2015 and then changed its name again to XPO CNW, Inc.
Prior to his retirement from CEO of the Company in 1987, O'Brien received a number of letters thanking him for his many years of service and offering him an office, secretary, and car service after his retirement ("the Agreement"). Plaintiff accepted this offer and continued to receive these benefits from 1987 through 1988. In addition, from 1988 through 1995, O'Brien continued to serve on the Board of Directors and the Company continued to provide a secretary, car service, and on-site office. From 1995 through 2006, the Company continued to provide the full-time secretary and car service, but the office was moved off-site.
After the Company changed its name to Con-Way, Inc. in 2006 and through 2011, it continued to provide O'Brien with a secretary, car service, and his own off-site office. In 2011, O'Brien's secretary retired and he proposed, as way to reduce costs, to forego his full-time secretary, car service, and office, and instead agreed that the Company would pay him $ 6,000 a month for the remainder of his life ("the Modified Agreement"). Since that time, from 2011 through November 2015, O'Brien sent regular monthly invoices and the Company sent the $ 6,000 each month to O'Brien. In 2015, the Company merged with XPO Logistics, Inc. and the monthly payments were included in the "employee benefits" section of a Disclosure Letter that accompanied the merger agreement. However, beginning in December 2015, the Company refused to make the monthly payments.
O'Brien filed this action in May 2016 in an effort to recover the $ 6,000 monthly retirement compensation he says he was owed. O'Brien passed away in February 2017, and his son, Christopher O'Brien, acting as trustee of the family trust, continued this action to recover the amounts the trust contends are still due. Plaintiff claims the trust is owed $ 107,268.49 for contract damages ($ 90,000 of missed payments in addition to prejudgment interest). Plaintiff moves for partial summary judgment on his first cause of action for breach of contract.
Defendants move for summary adjudication on the causes of action, for intentional interference with contract and elder abuse, and for punitive damages. The Court shall address the Plaintiff's motion first as the other causes of action rely in part upon the existence of a contract for their premise.
The Court shall address additional specific facts in the remainder of its order.
ANALYSIS
A. Legal Standards on Motion for Summary Judgment.
A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. Celotex Corp. v. Catrett , 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there *782 is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio , 125 F.3d 732, 735 (9th Cir. 1997).
The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex , 477 U.S. at 323, 106 S.Ct. 2548 ; see also Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it may affect the outcome of the case. Id. at 248, 106 S.Ct. 2505. Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).
In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan , 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting Richards v. Combined Ins. Co. , 55 F.3d 247, 251 (7th Cir. 1995) ) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"); see also Fed. R. Civ. P. 56(e). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. Celotex , 477 U.S. at 323, 106 S.Ct. 2548 ; Fed. R. Civ. P. 56(e)(3).
B. Breach of Contract.
1. Factual Predicate for Claim of Breach of Contract.
Here, the Agreement first entered into by O'Brien and the Company at the time of his original retirement provided that, in exchange for O'Brien continuing to provide his consulting services, the Company would provide him an office, a secretary and access to a car service for as long as he wanted for the rest of his life. (See, e.g. , Declaration of Christopher R. O'Brien ("O'Brien Decl."), Ex. D; Declaration of Donald Moffitt ("Moffitt Decl.") ¶ 3, Exs. A, B; Declaration of Keith Kennedy ("Kennedy Decl.") ¶ 3[1] ; Declaration of Katherine F. Wenger ("Wenger Decl."), Ex. D (Kennedy Depo.) at 23:19-21, 23:19-21, 24:22-25:19; Ex. E (Scott Depo.) at 34:24-35:21, 79:24-80:20; Ex. A (O'Brien Depo.) at 26:24-27:4, 32:11-13, 44:20-45:1, 47:10-25, 48:25-49:10, 50:2-22, 52:13-23, 68:13-15, 72:4-74:24; Ex. C (O'Brien Depo.) at 131:16-19, 182:3-186:24, 188:22-187:4, 196:2-8); Ex. F (Stotlar Depo.) at 44:1-11.
In 1990, Con-Way, Inc. asked O'Brien to return as CEO when the Company was facing financial uncertainty. (See Wenger Decl. Ex. A (O'Brien Depo.) at 30:14-31:4; Ex. C (O'Brien Depo.) at 164:9-14; Ex. E (Scott Depo.) at 18:22-24; Moffitt Decl. ¶ 9.) O'Brien agreed to return, at reduced salary, and in 1991, stepped down from the position as CEO, but remained a board member and continued to consult for the Company. (See Moffitt Decl. ¶ 6, Ex. C; Kennedy Decl. ¶ 4; Wenger Decl. Ex. A (O'Brien Depo.) at 31:14-21, Ex. C
*783 (O'Brien Depo.) at 163:10-166:5.) At this time, Moffitt, then acting as CEO, confirmed the existence of the earlier Agreement reached in 1987. (See Moffitt Decl. ¶¶ 7-8, Exs. A, B; Wenger Decl. Ex. A (O'Brien Depo.) at 82:21-83:12, 84:3-22, 97:22-98:1.) O'Brien continued to serve on the Board from 1991 to 1995, and the Company continued to make available an office, secretary and car service. (See, e.g. , Kennedy Decl. ¶ 3; Moffitt Decl. Ex. D; Wenger Decl. Ex. N.) In 1995, O'Brien stepped down as Chairman of the Board of Directors and the Company, through its CEO Moffitt, again confirmed the earlier agreement for an office, secretary and car service. (See Moffitt Decl. ¶ 10, Ex. D.)
At the end of 2005, the Company's cost to provide these benefits was high and the value of the continued benefits to O'Brien were low. O'Brien and Kennedy agreed to modify the original Agreement and instead to pay O'Brien $ 6,000 per month as long as he lived. (See Wenger Decl. Ex. A (O'Brien Depo.) at 47:17-48:8, 55:18-56:11; 58:13-59:10, 62:24-25, 110:15-113:8; Ex. C (O'Brien Depo.) at 130:23-132:1, 193:24-197:4; Ex. D (Kennedy Depo.) at 28:10-22, 29:19-21, 30:5-19, 36:23-25, 49:11-18, Ex. F (Stotlar Depo.) at 35:7-18, 36:2-17, 38:2-4; Kennedy Decl. ¶¶ 5-8.) It appears from the record that this Modified Agreement was approved by the Chairman of the Board of Directors, the Company's CEO, and its Legal Counsel. (See Kennedy Decl. ¶ 6; Wenger Decl. Ex. D (Kennedy Depo.) at 30:25-31:4, 50:6-16; Ex. F (Stotlar Depo.) at 11:4-6, 43:16-25.)
In exchange for the earlier benefits of a secretary, office space, and access to car service, O'Brien sent monthly invoices to the Company for $ 6,000. Beginning in 2006 and through November 2015, these monthly invoices were received and paid in a timely manner. (See Answer ¶ 14 (Dkt. No. 82); Kennedy Decl. ¶¶ 5-8, 11; O'Brien Decl. ¶¶ 2-3, Ex. B; Declaration of Chantelle C. Egan ("Egan Decl.") Ex. C (Devens Depo.) at 59:25-60:25; Declaration of Renee O'Brien ¶ 2.) In addition, O'Brien made himself available for consultation by Company executives. (See Wenger Decl. Ex. C (O'Brien Depo.) at 200:11-201:12; Ex. D (Kennedy Depo.) at 32:22-33:13; Kennedy Decl. ¶ 4.)
In September of 2015, Con-Way, Inc. entered a merger agreement with XPO whereby XPO acquired 100% of the Company's stock, valued at approximately $ 3 billion. (See Egan Decl. Ex. C (Devens Depo.) at 110:3-15, Ex. 11; Declaration of Gorden Devens ("Devens Decl.") ¶ 2.) In the merger agreement, Con-Way, Inc. informed XPO that it had a "continuing financial obligation" to O'Brien of $ 6,000 per month, listed as a separate retirement benefit. The payments were purposefully disclosed in the merger agreement papers so as not to be disregarded. (See Egan Decl. Ex. C (Devens Depo.) at 198:18-24; Ex. 9 at ¶ 45; Ex. 10 at XPO 254; Wenger Decl. Ex. G (Devens Depo.) at 46:17-47:2, 107:11-13; Ex. H (Krull Depo.) at 60:16-21, 62:20-63:2, 99:19-100:8, 102:4-20.) On October 31, 2015, the merger closed and Con-Way, Inc. became a wholly-owned subsidiary of XPO and changed its name to XPO CNW, Inc. (See Wenger Decl. Ex H (Krull Depo.) at 92:2-22.)
At the beginning of November 2015, Gordon Devens, who was then acting as General Counsel, Senior Vice President for the Company, determined after conducting an examination of the relevant paperwork, disclosures, and invoices, that the Company did not owe a legal obligation to O'Brien to continue the monthly payments of $ 6,000. (See Devens Decl. ¶¶ 3-5.) Although Devens made a delayed payment for the month of November 2015, he thereafter discontinued the payments altogether beginning in December 2015 without communicating his reasons why for several *784 months. (See Egans Decl. Ex. C (Devens Depo.) at 65:24-66:3, 93:5-17; Devens Decl. ¶ 5.)
After private deliberations between the parties over the discontinued payments were unsuccessful at achieving a mutual understanding, O'Brien filed this lawsuit on May 27, 2016 in the Superior Court of California, County of Alameda to recover payments in the amount for $ 90,000, plus prejudgment interest. On July 11, 2016, Defendants removed to this Court on the basis of diversity jurisdiction. Plaintiff moves for partial summary judgment on the first claim for breach of contract.
2. Legal Analysis of Claim for Breach of Contract.
To prevail on a claim for breach of contract, a plaintiff must establish: (1) the existence of a contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) resulting damages to plaintiff. See, e.g., Oasis Realty, LLC v. Goldman , 51 Cal. 4th 811, 821, 124 Cal.Rptr.3d 256, 250 P.3d 1115 (2011) (citing Reichert v. General Ins. Co. , 68 Cal. 2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968) ). To establish the existence of a contract, a plaintiff must prove that (1) the parties are capable of contacting, (2) their consent, (3) a lawful object, and (4) a sufficient cause or consideration. See Cal. Civ. Code § 1550. "Consideration consists of a benefit bestowed or a detriment suffered as bargained for by the parties." A.J. Industries, Inc. v. Ver Halen , 75 Cal. App. 3d 751, 761, 142 Cal.Rptr. 383 (1977).
In 1987, the original agreement was entered into knowingly and for due consideration of continued consultation services. The Court is not persuaded by Defendants' contentions that the language of the agreement is too vague to be understood. The record also clearly indicates that the parties understood the terms of the original agreement for the entire length of its existence. See Employers Reinsurance Co. v. Superior Court , 161 Cal. App. 4th 906, 920-21, 74 Cal.Rptr.3d 733 (2008) (finding that evidence of performance is relevant to ascertain the meaning of the parties' agreement). The Company made the office, secretarial and car services available to O'Brien for the term of the parties' agreement.
Once the agreement was modified by consent of the parties in 2006, to allow the provision of a monthly payment instead of the office benefits, the parties continued to understand the terms of the modified agreement and the Company regularly paid the monthly cash disbursements upon receipt of invoices from O'Brien. In addition to his continued offer to provide consulting services, O'Brien agreed to forego the office benefits originally provided to him in exchange for reduced monthly payments. There is, again, no indication in the record that the parties failed to understand the terms or consideration granted in the Modified Agreement. The Modified Agreement, also adhered to for nearly ten years, set the terms for consideration and payment of monthly invoices for the rest of O'Brien's lifetime.
Defendants contend that, upon the merger and further investigation conducted by Devens, the Company concluded that there was no legal obligation to continue payments to O'Brien. Defendants argue that the terms are vague and the payments constitute merely a gift acknowledging O'Brien's past service without any reciprocal consideration. Again, the Court is not persuaded that the terms of the Modified Agreement were insufficiently definite to enable the Court or the parties to "ascertain the parties obligations and to determine whether those obligations have been performed or breached."
*785 Rockridge Trust v. Wells Fargo, N.A. , 985 F.Supp.2d 1110, 1143 (N.D. Cal. 2013) (internal citations omitted). Although Defendants characterize the consultation services offered by O'Brien and the lifetime of an elderly man as "eternity," the Court finds O'Brien provided adequate consideration of his consultation services and waiver of earlier-provided benefits. Also, at the age of 65 when the original agreement was formed (and at 93 when the Company terminated payments), the term of the agreement is not for eternal duration. Further, the fact that both the original and modified contract's terms had been fully actualized for nearly 30 years favors the determination that the terms were sufficiently definite and approved by the Company's course of conduct. See Employers Reinsurance , 161 Cal. App. 4th at 920-21, 74 Cal.Rptr.3d 733.
Accordingly, the Court GRANTS Plaintiff's motion for summary judgment as to the first claim for breach of contract. The amount owing, including prejudgment interest, shall be determined separately at such time as the Court enters judgment.
C. Intentional Interference with Contract.
Defendants move for summary adjudication of Plaintiff's second claim for relief for intentional interference with contract. To prevail on a cause of action for intentional interference with contract, a plaintiff must prove: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Reeves v. Hanlon , 33 Cal. 4th 1140, 1148, 17 Cal.Rptr.3d 289, 95 P.3d 513 (2004).
Defendants contend that Devens, acting as an officer and director of the Company, made the determination that there was no legal obligation to continue payments to O'Brien. "The tort duty not to interfere with the contract falls only on strangers - interlopers who have no legitimate interest in the scope or course of the contract's performance." Applied Equipment Corp. v. Litton Saudi Arabia Ltd. , 7 Cal. 4th 503, 514, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). Plaintiff argues that while Devens claims he was acting upon XPO's behalf (while the contract was with Con-Way, Inc.), Plaintiff proffers evidence that Devens was also senior legal counsel at Con-Way, Inc. (See Wenger Decl. Ex. G (Devens Depo.) at 73:14-74:22.) Accordingly, there remains a dispute of fact regarding whether Devens was acting as stranger to the original contract, or on behalf of the interested party.
Second, Defendants contend that XPO had no knowledge of the contract, as Devens had "reasonably determined ... that no legally enforceable agreement existed." (Opp. Br. at 12.) The Court has found that a valid agreement existed, and regardless, the existence of the history of payments and course of conduct, including Devens' own decision to pay the November 2015 invoice, and corporate disclosures indicates that XPO certainly had knowledge of the existence of the disputed agreement and had made an independent determination not to honor it as a legally binding contract.
Lastly, Defendants contend because XPO has an ownership interest in Con-Way, XPO's conduct was privileged. The mere fact that XPO had an ownership interest in Con-Way does not automatically establish privilege, however. Rather, the affirmative defense of privilege only applies if (1) that person does not act with improper means, and (2) acts to prevent his ownership interest from being prejudiced by the contract. See *786 Sade Shoe Co. v. Oschin & Snyder , 162 Cal. App. 3d 1174, 1181, 209 Cal.Rptr. 124 (1985). Further, the question of privilege is whether the person's conduct was fair and reasonable under the circumstances, which is a question of fact to be determined by the jury. See, e.g. , Collins v. Vickter Manor, Inc. , 47 Cal. 2d 875, 883, 306 P.2d 783 (1957) (holding that "whether or not [Defendants] were privileged to cause the corporation to discontinue its relations with plaintiff, in the belief that such a course of action was in the best interests of the corporation, is a matter of defense, to be decided by a resolution of the factual issues presumptively involved."); see also Woods v. Fox Broadcasting Sub., Inc. , 129 Cal. App. 4th 344, 351 n.7, 28 Cal.Rptr.3d 463 (stating that the privilege to interfere is "a qualified privilege that turns on defendant's state of mind, the circumstances of the case, and the defendant's immediate purpose when inducing the breach."). Whether a defendant was privileged to cause a breach of contract based on its claim that the defendant was acting in the best interests of the corporation must be decided by resolution of factual issues. See Asahi Kasei Pharma Corp. v. Actelion Ltd. , 222 Cal. App. 4th 945, 962, 169 Cal.Rptr.3d 689 (2013). Because there remain disputed facts concerning the state of mind, circumstances, and defendant's purpose in stopping payments and thereby inducing the breach, the Court DENIES Defendants' motion for summary adjudication as to the second cause of action for intentional interference with contract.
D. Elder Abuse.
To establish a claim for financial elder abuse under California Welfare and Institutions Code Section 15600et al. , a claimant must demonstrate that a person or entity took, secreted, appropriated, or retained real or personal property of an elder adult for wrongful use or with intent to defraud, or both. Cal. Welf. & Inst. Code § 15610.30(a). A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for wrongful use, if among other things, the person or entity knew or should have known that this conduct would likely be harmful to the elder or dependent adult. Cal. Welf. & Inst. Code § 15610.30(b). Here, there is no question that O'Brien was an elder adult and the conduct of ending monthly payments would cause him harm. The only remaining question is a factual dispute over Defendants' motive. Although Devens contends that he engaged in a good faith investigation regarding the Company's obligation to continue payments, he also admits that he neglected to inform O'Brien of the Company's position that there was no valid contract. (See Wenger Decl. Ex. H (Devens Depo.) at 88:16-92:21, 107:8-13, 148:9-12, 159:5-161:2.) The evidence establishes that the Company was aware of the earlier agreements and had independently and without disclosure to O'Brien determined after years of payments, that the agreements were not binding. The Court finds that the motive is a question of fact to be determined by a jury. Because there remain disputed facts concerning the state of mind, the contextual circumstances, and defendant's motive in stopping payments, the Court DENIES Defendants' motion for summary adjudication as to the third cause of action for elder abuse.
E. Punitive Damages.
Pursuant to California Civil Code Section 3294, in an action for breach of an obligation not arising from contract, where a plaintiff can prove that the defendant was guilty of "oppression, fraud, or malice" the plaintiff may recover punitive damages. Again, the Court finds that the question of Defendants' motive is subject to dispute and the question whether the facts would support "an award of punitive damages is for the trier of act, since the *787 degree of punishment depends on the peculiar circumstances of each case." Spinks v. Equity Residential Briarwood Apartments , 171 Cal. App. 4th 1004, 1053, 90 Cal.Rptr.3d 453 (2009). Summary judgment on the issue of punitive damages is only appropriate where "no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud, or oppression." Id. Because the Court has denied summary judgment as to the underlying claims, and finds the question of motive to involve disputed issues of fact, the Court DENIES Defendants' motion for summary adjudication as to Plaintiff's claim for punitive damages.
CONCLUSION
For the foregoing reasons, the Court GRANTS Plaintiff's motion for partial summary judgment as to the first cause of action for breach of contract and DENIES Defendants' motion for summary adjudication of the second cause of action for intentional interference with contract, the third cause of action for elder abuse, and Plaintiff's claims for punitive damages.
The parties shall meet and confer - in person - and update the Court by joint case status report by no later than March 29, 2019 their intended course of action for the remainder of this matter. The Court is mindful that the original amount in dispute barely meets the threshold jurisdictional minimum and encourages the parties to seek resolution of this matter. If requested, the Court is amenable to referring the parties to Court-sponsored or private alternative dispute resolution.
The Court shall conduct a case management conference on April 5, 2019 at 11:00 a.m.
IT IS SO ORDERED.

Defendants argue that the Court should "disregard" the declarations of Moffitt and Kennedy as self-serving and not relevant as to timing of employment. The Court is not persuaded by this argument and has considered these declarations as well as those offered by Defendants.